413 P.2d 270

**FLUOR CORPORATION, Ltd., Appellant,**

v.

*Milton F. SYKES, as Administrator of the Estate of Donald D. Sykes, Deceased, Appellee.*\*

**No. 2 CA–CIV 91.**

Court of Appeals of Arizona.

April 19, 1966.

---

\* This appeal was filed with the Arizona Supreme Court and assigned that court's No. 8298. The matter was referred to this court pursuant to A.R.S. Section 12–120.23.

**212**

---

Lesher, Scruggs, Rucker, Kimble & Lindamood, by Robert O. Lesher, Tucson, for appellant.

Lyle R. Allen, Bisbee, for appellee.

JOHN A. McGUIRE, Superior Court Judge.

The appellant, Fluor Corporation, has appealed from a judgment against it, after a jury verdict, in a wrongful death action brought by the administrator of a workman killed while working on one of the government missile sites in the vicinity of Tucson, Arizona. The defendant, Fluor Corporation, Ltd., was the prime contractor on eighteen missile sites and had entered into a subcontract with Graver Tank & Manufacturing Company for certain welding work to be performed. The deceased was in the process of doing this work when an explosion and fire occurred resulting in his death.

Graver employees had been welding in a three-feet-in-diameter, approximately-forty-feet-in-depth, vertical cylinder-shape, below-ground-level, metal shaft. During welding operations ventilation had to be provided because the natural circulation of air was insufficient to carry off the resulting harmful fumes. The employees assigned to the work in this shaft had arranged makeshift ventilation. For two or three days preceding the day on which Sykes' accident occurred they had used a compressor borrowed from another subcontractor. After lunch on the day of the accident the compressor was removed for use elsewhere and ventilation was provided by flowing into the shaft, by hose, oxygen from an acetylene welding and cutting rig. This was the method for ventilation when the welder who preceded Sykes started his work at a little after 6 p. m. That welder's trousers caught on fire, as did a large, wooden spool, which served as a floor of the shaft.

When Sykes began to weld in the shaft, (sometime between 7:45 p. m. and 8 p. m.) he had been informed of the ventilation method being used but had not been warned of any danger nor informed of the previous fires. When he struck an arc, preparatory to welding, his clothing became ignited because the oxygen-filled atmosphere had increased its flammability. The resulting burns caused his death.

The complaint presented to the trial court three theories of recovery: (1) that the type of work being performed was of such a type as would probably result in injury to others unless special precautions were taken and that therefore liability in connection with the work could not be delegated to a subcontractor, (2) that Fluor Corporation had retained control over the manner of the doing of the work by Graver and was negligent in exercising the controls re-

tained, and (3) that the contract between Fluor and the United States Government required certain safety precautions to be followed, which contract had been breached by Fluor, thus resulting in the death of the deceased workman, Sykes.

The case was submitted to the jury on only the first theory, that is, of nondelegable duty. Instructions were given, over the objections of Fluor, generally under the principles of law set forth in sections 413, 416 and 417 of the Restatement (Second), Law of Torts. Since the trial of this action, this court has held in Welker v. Kennecott Copper Co., 1 Ariz.App. 395, 403 P.2d 330 (1965), that workmen of an independent contractor are not within the contemplation of the word "others" as used in these sections and that the law of Arizona does not recognize the doctrine of these "nondelegable" duties as between an owner and the workmen of an independent contractor. We refer to the Welker opinion for the reasons for this decision.

■ We believe that the liability of a prime contractor to an employee of an independent subcontractor is generally analogous to the liability of an owner or possessor of land¹ to the employee of an independent contractor. A general statement of this law is found at 57 C.J.S. Master and Servant § 609, p. 380:

"Where it is sought to hold a contractor liable for injuries caused by the negligence of his subcontractor, the same rule applies as where it is attempted to hold the owner liable for injuries resulting from the negligence of the contractor." 57 C.J.S. Master and Servant § 609, p. 380.

In the Restatement (Second), Law of Torts, the relationships are equated. See sections 383 and 414 (which latter section is quoted in this decision infra). All of the reasons for refusing to apply this doctrine of nondelegable duty to workmen on the job, as expressed in Welker, seem equally applicable to the relationship of the prime contractor to the employee of a sub-

contractor as to the relationship between owner and employee of a prime contractor.

■ Therefore, this being one of the questions raised on appeal, we are constrained by the Welker decision to reverse the judgment of the trial court by reason of the improper instructions given on nondelegable duty. However, the question remains as to whether this case should be sent back for a new trial, to be submitted to the jury on one of the other theories submitted by the plaintiff, or whether, there being no credible evidence presented to the trial court which would have justified a recovery for the plaintiff, this appellate court should now order that judgment be entered for the defendant Fluor. If there was no evidence so presented and none wrongfully excluded by the trial court which would support a judgment for the plaintiff, this court would have the duty of ordering judgment for the defendant, Shetter v. Rochelle, 2 Ariz.App. 607, 411 P.2d 45 (1966).

■ We are therefore constrained to evaluate the evidence presented, in the light most favorable to the plaintiff's position, Sax v. Kopelman, 96 Ariz. 394, 396 P.2d 17 (1964), so as to determine whether there was sufficient evidence presented to establish recovery either on the theory that Fluor had retained controls over the manner of the doing of this work, which control was negligently exercised, or on the theory of third party beneficiary to the contract between Fluor and the United States Government.

■ We do not reach the problem of the third party beneficiary theory, because we believe there is in the record sufficient evidence to go to the jury on the question of Fluor's control of the manner of the doing of this work. Surprisingly, in view of the contentions of the plaintiff, the contract between Fluor and Graver was not admitted in evidence, because of objections posed thereto by the plaintiff. This, however, is not fatal to the plaintiff's case, because even without this contract, we believe there is some credible and material evidence that Fluor retained certain control over the

work of Graver which a jury might find was negligently exercised. One such indication is to be found in plaintiff's Exhibit 38 in evidence which is denominated "Accident Prevention Program for Construction of Missile Launch Facilities Titan II, Phase II." This pamphlet, authored and distributed presumably to subcontractors and sub-subcontractors on this job by the defendant Flour, reads in part:

"At this project, the responsibility of safety falls under the jurisdiction of the Project Manager.

\* \* \* \* \* \*

"Responsibility—The prime responsibility for project accident prevention rests with the Project Manager.

\* \* \* \* \* \* .

*Each subcontractor or sub-subcontractor is therefore responsible for accident prevention to the Fluor Project Manager through the Fluor Site Superintendent just as though they were employees of The Fluor Corporation, Ltd.,* \* \* \*.

\* \* \* \* \* \*

"All equipment, job vehicles, and mobile equipment will be thoroughly checked to assure safe mechanical operation before being assigned to the job. Maintenance of such equipment for safe efficient operation is the responsibility of the Fluor Project Manager or his delegated maintenance representative.

"Safe operation and maintenance requirements for specific items of equipment will be covered by addenda to this program." (Emphasis added.)

In addition, there is the fact in evidence that shortly before the accident in question, the defendant Fluor received a communication from the United States Government stating in part:

"Due to the confined locations in which much of the welding under your contract will take place, very high concentrations of welding fumes can be expected. A recent fatality at one of the complexes under our Phase I contract may have been attributable to such fumes.

"It is directed that all welding be in accordance with paragraphs 8 thru 8.14, American Standard 'Safety in Electric and Gas Welding and Cutting Operations' (ASA Z 49.1). *It is highly recommended that ventilation be provided by the use of individual ventilated hoods for all personnel working in confined areas where welding is being performed. Where individual hoods are not provided, ventilation will be provided at the minimum rate of 2000 cu ft per welder."* (Emphasis added.)

There is no showing in the evidence that Fluor took any positive action as the result of receiving this communication.

Considering these bits of evidence together, and without the benefit of knowing what the contract between Fluor and Graver provided as to which was to have responsibility for providing ventilation for the welding work, we are not prepared to say that there is " \* \* \* no evidence \* \* \*."[1] to support the plaintiff's case.

In Welker we held that liability for retained control could be invoked by an employee of an independent contractor and we follow that law now. We believe section 414 of the Restatement (Second), Law of Torts, properly states the general law in this area:

"§ 414. Negligence in Exercising Control Retained by Employer

"One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

"Comment:

"*a.* If the employer of an independent contractor retains control over the

---

1. Quote from Shetter v. Rochelle, 2 Ariz.App. 607, 411 P.2d 45, 47 (1966).

operative detail of doing any part of the work, he is subject to liability for the negligence of the employees of the contractor engaged therein, under the rules of that part of the law of Agency which deals with the relation of master and servant. The employer may, however, retain a control less than that which is necessary to subject him to liability as master. He may retain only the power to direct the order in which the work shall be done, or to forbid its being done in a manner likely to be dangerous to himself or others. Such a supervisory control may not subject him to liability under the principles of Agency, but he may be liable under the rule stated in this Section unless he exercises his supervisory control with reasonable care so as to prevent the work which he has ordered to be done from causing injury to others.

*"b. The rule stated in this Section is usually, though not exclusively, applicable when a principal contractor entrusts a part of the work to subcontractors, but himself or through a foreman superintends the entire job. In such a situation, the principal contractor is subject to liability if he fails to prevent the subcontractors from doing even the details of the work in a way unreasonably dangerous to others, if he knows or by the exercise of reasonable care should know that the subcontractors' work is being so done, and has the opportunity to prevent it by exercising the power of control which he has retained in himself. So too, he is subject to liability if he knows or should know that the subcontractors have carelessly done their work in such a way as to create a dangerous condition, and fails to exercise reasonable care either to remedy it himself or by the exercise of his control cause the subcontractor to do so.*

*"c. In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is*

done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way."

(Emphasis added.) Restatement (Second), Torts § 414 (1965).

Having found that there was sufficient evidence to merit sending this case back for a new trial on the issue of negligent exercise of retained control, we do not determine whether the theory of third party beneficiary is sustainable. Our decision to forego passing upon this is prompted by the fact that this theory of the case has not been adequately briefed to us by the parties.

The question remains, and is assigned as error on appeal, as to whether any negligence of Fluor could have been the proximate cause of this accident. The contention is made that the act of Graver employees in using oxygen for ventilation is a superseding cause, thus cutting off any possible liability on the part of Fluor. The argument is made that it might be possible for Fluor to foresee that the failure to provide proper ventilation might result in asphyxiation, nausea or similar injury, but that it was not foreseeable that oxygen might be used for ventilation, thus causing death by burning.

 There are two answers to this contention. The first is that, as the quoted portions of the Restatement (Second), Law of Torts, section 414 indicates, liability of a person retaining control may arise if such person " * * * knows or by the exercise of reasonable care should know that

the subcontractors' work is being so done * * *." In this case, the evidence is that the use of this oxygen tank for ventilation had been going on for at least six hours prior to Sykes' injury. In an answer to an interrogatory, which was offered in evidence by the plaintiff but wrongfully[2] excluded by the trial court, the defendant Fluor admitted that the use of oxygen for ventilation is "* * * not considered * * * safe * * *" because it "* * * does support and induce combustion." There was evidence that Fluor inspectors were on the job on a daily basis. From this, the jury might very well find that Fluor should have known of the unsafe practice being followed.

Secondly, we believe that the jury might very well find that it was foreseeable that workmen not provided with proper ventilation might use an oxygen tank for ventilation. Amongst the written material admitted in evidence is the following statement: "Oxygen from a cylinder or torch shall never be used for ventilation" (para. 8.4.4 of "Safety in Welding and Cutting") because it "* * * supports and accelerates combustion * * *" (para. 3.8.5.1a of "Safety in Welding and Cutting"). Together these give indication that the risk resulting in the death of Sykes was within one of the known hazards of this industry. We therefore cannot hold as a matter of law that this death could not have been proximately caused by any negligence of Fluor. MacNeil v. Perkins, 84 Ariz. 74, 324 P.2d 211 (1958); Lyric Amusement Company v. Jeffries, 58 Ariz. 381, 120 P.2d 417 (1941).

Fluor has complained of the failure to give its instruction No. 1, which would have told the jury that the plaintiff "* * may * * *" prevail against the defendant "* * * only if you find * * *" that the dangerous condition resulting in

his death was not known to the deceased and not discoverable in the exercise of reasonable care. This instruction is in violation of the Layton v. Rocha, 90 Ariz. 369, 368 P.2d 444 (1962) rule and was therefore rightfully refused.

Fluor also complains of the failure to give its instruction No. 1A. This instruction was substantially the same as instruction No. 1, except that it omitted the objectionable features noted above pertaining to contributory negligence. The instruction, however, is in the nature of a negative one, informing the jury that it cannot find for the plaintiff unless it finds "* * * all of the following things together * * *" (after which is a description of four factual-legal concepts). The court did instruct in the terms of the "four issues" instruction, sometimes referred to as the "hurdle" instruction, to the effect that unless certain specific issues of negligence and proximate causation were found in certain ways, the jury should bring in a verdict for the defendant. The subject instruction is in effect the reiteration of the negative principle in different language, and we see no harm in the refusal of the court to grant the instruction. Sisk v. Ball, 91 Ariz. 239, 371 P.2d 594 (1962).

Fluor also complains of the failure to give its requested instruction No. 2, which would have told the jury, among other things, that Fluor "* * * was not responsible for the acts or omissions of the Graver Tank Company, or for the acts or omissions of employees of Graver Tank Company." While the defendant may, on retrial, be entitled to an instruction informing the jury that it is not responsible generally for the acts or omissions of Graver, this must be qualified, if there be evidence that Fluor retained certain control over the activities of Graver, to

---

2. An objection was made to the offer of this evidence on the basis that it was "hearsay," which the trial court sustained. This was error. Answers to interrogatories by a party are admissible against the party when they are in the nature of admissions against interest. Rules 26(d) and 33, Rules of Civil Procedure, 16 A.R.S., and see Bogard G.M.C. Co. v. Henley, 92 Ariz. 107, 374 P.2d 660 (1962).

permit liability under the theory enunciated in section 414 of the Restatement (Second), Torts, previously quoted herein. The instruction submitted did not contain this exception and therefore we see no error in refusing to give the instruction.

Fluor also complains of the failure to give its requested instruction No. 3, which would have told the jury, in part:

"I instruct you that under our law every person in the management of his own affairs is charged with a duty to use reasonable care for his own safety. Donald Sykes had such a duty and in doing his work he was required to observe all of the precautions which would have been used by a reasonable man in like circumstances. The amount of care required depends upon the relative safety or danger of the activity being undertaken. The more danger which is attendant on any given activity, the more care which is required."

 This statement appears to be a correct statement of the law and states in a positive way the duty of the deceased toward himself. MacDonald v. Eichenauer, 77 Ariz. 252, 254, 269 P.2d 1057, 1058 (1954). We believe the instruction quoted above should have been given, but do not find it necessary to determine whether any error committed was reversible, in that the case must be sent back for a new trial for the reasons herein delineated.

Fluor also complains of an instruction to the jury that in determining the amount of damages it was proper to:

"* * * consider the loss of love, affection, companionship, counsel, advice, the loss of the deceased's care, protection and solicitude for the welfare of his mother, and the loss of the comfort and pleasure his mother would have received from him, but for his death. You may also consider as bearing upon the amount of your verdict, any anguish, sorrow, stress, mental suffering, pain, and shock which from the evidence, the death of Donald Sykes may have caused his mother to suffer."

This instruction permitted the jury to include noneconomic interests of a family in its award. Although Fluor has assigned the giving of this instruction as error, at the trial its counsel stated, "If it is the law of Arizona that nonpecuniary losses are recoverable, I do not object to the giving of * * *" the instruction on damages.

We have held in Salinas v. Kahn, 2 Ariz. App. 181, 407 P.2d 120 (1965), modified (on another point) and rehearing denied, 2 Ariz.App. 348, 409 P.2d 64 (1965), that intangible losses, such as those enumerated in the instruction quoted above, may be considered in assessing pecuniary damage.

The giving of the incorrect instruction on the issue of Fluor's liability for Graver's negligence requires that the judgment be reversed and the cause be remanded for a new trial.

HATHAWAY and MOLLOY, JJ., concur.

NOTE: Judge HERBERT F. KRUCKER having requested that he be relieved from consideration of this matter, Judge JOHN A. McGUIRE was called to sit in his stead and participate in the determination of this decision.