462 P.2d 108

Richard GERMAN and Virgil Cook, Appellants,

v.

MOUNTAIN STATES TELEPHONE & TELEGRAPH COMPANY, a foreign corporation, Appellee.

No. I CA–CIV 888.

Court of Appeals of Arizona, Division 1.

Department B.

Dec. 10, 1969.

Rehearing Denied Jan. 5, 1970.

Review Denied Feb. 3, 1970.

**92**

Gorey & Ely, by Herbert L. Ely, Phoenix, for appellants.

Moore, Romley, Kaplan, Robbins & Green, by Philip A. Robbins and Craig R. Kepner, Phoenix, for appellee.

HAIRE, Judge.

The facts in this case require a consideration of the law relating to the possible liability of an employer of an independent contractor for injuries to the employees of that independent contractor.

At the time of the injuries here involved, plaintiffs Richard German and Virgil Cook were employees of an independent contractor [1] who was engaged in work generally consisting of the construction of manholes, the digging of trenches, and the installation of conduits and telephone cables for defendant Mountain States Telephone & Telegraph Company, on defendant's easement within the boundaries of a public street in Phoenix, Arizona. The plaintiffs were injured as a result of a cave-in of a trench being excavated for the installation of these conduits and cables.

Plaintiffs' complaint alleged that the cave-in, and plaintiffs' injuries resulting therefrom, were the direct and proximate result of the negligence and carelessness of the defendant telephone company.

While as a general rule the employer of an independent contractor is not liable for physical harm resulting from an act or omission of the independent contractor or his servants (see McGuire v. Valley National Bank of Phoenix, 94 Ariz. 50, 381 P.2d 588 (1963); Restatement (Second) of Torts Sec. 409 (1965)); this general principle has been subjected to numerous exceptions by decisions which are confusing and

---

1. Plaintiffs' employer was June Excavating Company. Because of Workmen's Compensation coverage, plaintiffs did not make June Excavating Company a defendant in this action. There was no direct contention made in the trial court or this appeal that the relationship between the defendant, Mountain States Telephone & Telegraph Company and June Excavating Company was other than that of employer and independent contractor.

appear to be in conflict. Restatement (Second) of Torts Sec. 409, comment b (1965); W. Prosser, Handbook of the Law of Torts 481 (3d ed. 1964). In arriving at our decision we have considered many beads on this string of confusing decisions, and have concluded that in the case at hand the trial court correctly applied the above stated general principle and did not commit error in directing a verdict for the defendant.

In our opinion much of the confusion in this area of the law results from the failure of the courts to adequately set forth in their opinions the exact basis for the imposition of liability. In many instances the employer occupies a dual capacity—not only is he the employer of an idependent contractor, but also (whether as general contractor or owner) he occupies the status of a person in possession or in control of the land on which the injury occurs.

In his capacity as an employer of an independent contractor, liability may arise from his own actual fault through the application of general agency principles, such as, where the conduct of the independent contractor which caused the injury was in direct obedience to instructions from the employer. Ellis v. Sheffield Gas Consumers Co., 21 El. & Bl. 767, 118 Eng.Rep. 955, 19 E.R.C. 180 (1853); Garden of the Gods Village, Inc. v. Hellman, 133 Colo. 286, 294 P.2d 597 (1956); Restatement (Second) of Torts Sec. 410 (1965). The employer might also be liable to a third party injured by the acts of an employee of a negligently selected independent contractor. Risley v. Lenwell, 129 Cal.App.2d 608, 277 P.2d 897 (1954); Baker v. Scott County Milling Co., 323 Mo. 1089, 20 S.W. 2d 494 (1929); Restatement (Second) of Torts Sec. 411 (1965). Further, if the employer has retained sufficient controls over the manner or method utilized by the contractor in actually doing the work, the employer can be held liable under rules of law applicable to the master-servant relationship. Burgess v. Gray, 1 C.B. 578, 135 Eng.Rep. 667 (1845); Bergquist v. Penterman, 46 N.J.Super. 74, 134 A.2d 20 (1957),

certification denied, 25 N.J. 55, 134 A.2d 832 (1957); Restatement (Second) of Torts Sec. 414 (1965).

In his capacity as a person in control or possession of land, liability may be imposed under general principles and limitations for dangerous conditions of the land, whether existing prior to the activities of the contractor, Butler v. Lewman, 115 Ga. 752, 42 S.E. 98 (1902), or subsequent thereto as a result of the contractor's work, Kiehling v. Humes-Deal Co., 16 S.W.2d 637 (Mo.App. 1929), or because of the inherently dangerous nature of the activity being carried on through the independent contractor, S. A. Gerrard Co. v. Fricker, 42 Ariz. 503, 27 P.2d 678 (1933).

The foregoing is not intended as a complete catalog or delineation of all the circumstances under which an employer of an independent contractor may be subjected to liability. Rather, the intention is to illustrate that many of the "exceptions" reported in the decisions result from fact situations where other relationships exist, and liability is in reality based upon these other relationships rather than strictly upon the basis of the relationship of employer and independent contractor.

Plaintiffs did not contend that defendant was liable under the doctrine of *respondeat superior*, but rather relied primarily upon the doctrine of "retained control" which is set forth in the Restatement (Second) of Torts Sec. 414 (1965). This doctrine of "retained control" is recognized or discussed in three recent Arizona decisions, Chesin Construction Co. v. Epstein, 8 Ariz. App. 312, 446 P.2d 11 (1968); Fluor Corp. v. Sykes, 3 Ariz.App. 211, 413 P.2d 270 (1966), rehearing denied, 3 Ariz.App. 559, 416 P.2d 610 (1966); and Welker v. Kennecott Copper Co., 1 Ariz.App. 395, 403 P.2d 330 (1965).

Sec. 414 reads as follows:

"Negligence in Exercising Control Retained by Employer

"One who entrusts work to an independent contractor, but who retains the

control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."

Comment b to Sec. 414 indicates that Sec. 414 was intended primarily for application to situations involving several subcontractors doing different parts of the same work under the general superintendence of the principal contractor. In such situations the owner or principal contractor generally retains certain controls over other parts of the work and the premises and thus may become liable for the negligent exercise of his retained control. His duties in these circumstances are in many ways analogous to the duties imposed upon any person in possession or control of land. The legal duty involved is summarized in an American Law Reports annotation entitled "General contractor's liability for injuries to employees of other contractors on the project", 20 A.L.R.2d 868 (1951), as follows:

> " * * * [W]hat is usually meant is a duty to oversee conditions in the work of each contractor so far as they affect the safety of the employees of others—this, of course, in addition to caring for such parts of the structure as are not within the control of any other contractor and such facilities as are furnished by himself. He is not liable to the employees of a subcontractor, for example, for a failure to examine appliances supplied to them by their own employer, or for a dangerous method of operation adopted by their own employer, the danger of which is not caused by some condition of the premises for which he is responsible." (20 A.L.R.2d at 871).

In the case at hand there were no other contractors or subcontractors involved, nor did defendant retain any control over *other* parts of the work—the entire work involved on the premises where plaintiffs' injuries occurred was being performed by plaintiffs' employer, June Excavating Company. Under these facts it is apparent that defendant's liability cannot be predicated upon any alleged failure of defendant to properly supervise other contractors or exercise any retained control over other parts of the work or the premises. Thus, many of the decisions cited by plaintiffs are inapplicable. Defendant's liability under the doctrine of retained control, if any, must be predicated upon the theory that defendant retained sufficient control over the actual work of plaintiffs' employer, June Excavating Company, to subject defendant to liability for negligence in the exercise of that control.

Plaintiffs point out several provisions[2] of the contract between defendant and the independent contractor, June Excavating Company, as evidence of such retained control. The rights reserved in these provisions are generally reserved to owners in construction contracts, and in our opinion these provisions relied upon by plaintiffs do not give defendant any control or right to control the *method or manner of doing* the details of the work, but rather generally relate to the defendant's right to make

2. Plaintiffs rely upon provisions of the contract requiring that all work be completed in accordance with contract specifications (Art. 1); requiring that the materials furnished by the contractor be of the quality specified by the contract and that the contractor complete all work with promptness and diligence to the satisfaction of the telephone company (Art. 2); giving the defendant telephone company's representative the right to reject work and materials not in accordance with contract specifications (Art. 3); giving the telephone company the right to determine the time sequence of the progress of the work and the right to make additions or subtractions from the work in accordance with the contract schedule of costs (Art. 4); specifying the telephone company's remedy in the event of violation of contract provisions by the contractor (Art. 5); prohibiting the contractor from using any equipment or methods which might endanger or interfere with the continuity of the telephone company's service (Art. 7); and prohibiting assignment or subletting of the work without the telephone company's consent (Art. 15).

certain that the *results obtained* conform to the specifications and requirements of the contract. See comment c, Sec. 414, Restatement (Second) of Torts (1965).[3] The mere retention of supervisory controls of this nature is not sufficient to impose liability upon the employer, especially when there is no showing that the accident occurred as a result of any affirmative action taken by the employer under these contract provisions. Chesin Construction Co. v. Epstein, *supra*.

■ As stated in Lipka v. United States, 249 F.Supp. 213 (N.D.N.Y.1965), aff'd, 369 F.2d 288. (2d Cir. 1966), cert. denied, 387 U.S. 935, 87 S.Ct. 2061, 18 L.Ed.2d 997 (1967) :

" * * * [G]eneral provisions in a contract, reserving to a principal the right to supervise, inspect or approve the work of a contractor, do not of themselves make the principal liable for harm resulting from negligence of the contractor. The principal may not be held liable without a showing of actual control over the details of performance." (249 F.Supp. at 216).

Further, the right to program or direct the sequence of the work or reserving the right to prescribe changes or alterations does not give defendant the right to control the details of the method or manner of doing the work. Gallagher v. United States Lines Co., 206 F.2d 177 (2d Cir. 1953), cert. denied, 346 U.S. 897, 74 S.Ct. 221, 98 L.Ed. 398 (1953) ; Celender v. Allegheny County Sanitary Authority, 208 Pa.Super. 390, 222 A.2d 461 (1966).

If there could be any doubt as to the intention of the contracting parties as to whether or not defendant was to have the right to control the details of the manner of doing the work, such doubt is completely removed by the provisions of Article 6 of the contract between defendant and June Excavating Company which provides as follows :

"The Contractor shall have full control and direction over the mode and manner of doing the work. All work is to be done wholly at the risk of the Contractor, and during its progress the Contractor shall take all precautions for its proper and safe performance."

We realize that the provisions of the written contract are not necessarily conclusive against the plaintiffs in this action, since evidence of the conduct of the contracting parties might show that notwithstanding the written contract, defendant did in fact exercise control over the contractor in the actual method and manner of doing the work. Arizona-Hercules Copper Co. v. Crenshaw, 21 Ariz. 15, 184 P. 996 (1919) ; Chesin Construction Co. v. Epstein, *supra.* However, a review of the evidence fails to disclose any such conduct.

The evidence shows that plaintiffs were injured when the walls of the trench collapsed during construction because of a lack of temporary bracing or shoring. Pursuant to the contract, defendant maintained a representative on the job for the purpose of inspecting the work and materials furnished, to make certain that the results were as required by the contract's specifications. The evidence relating to his conduct on the job shows that he was a supervisor or inspector for defendant; that on this particular job he was there at least a part of every day; and that there were no other employees of defendant on the job. In his day-to-day duties he observed the

3. "In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way." (Restatement (Second) of Torts Sec. 414, comment c (1965).

progress of the job, saw that the trench was straight, and that the conduit was laid in compliance with the contract specifications. At the time of the accident he was about one block away, sitting in his truck, after eating his lunch. He had been at the site about one hour before the cave-in occurred and at that time the contractor was using shoring (temporary bracing) in the trench. At the time of the accident the contractor had switched or gone to the "V" method of trenching and was not using the "shoring" method. The person on the job who would make the decision as to whether the contractor would use shoring or "V" type trenching was the job superintendent, a Mr. Jaskowiak, who was an employee of the independent contractor. Mr. Jaskowiak was "the person in charge of the employees who actually were doing the work" and "actually supervised and controlled the men who were actually working on the ditch itself". The testimony was that defendant's inspector did not "have anything to do with how or what type of ditch was being dug".

The foregoing summarizes all the testimony relating to the defendant's contacts with the work. From this testimony it affirmatively appears that defendant did not in fact exercise any control over the details of the method and manner of doing the work. Thus, inasmuch as neither the contract nor the conduct of the parties manifests any retention or exercise of the type of control required to subject defendant to liability for plaintiffs' injuries, defendant could not be held liable under the doctrine of retained control. Chesin Construction Co. v. Epstein, *supra*.

In attempting to utilize the doctrine of retained control to impose liability under the circumstances of this case, it is apparent that plaintiffs are simply attempting to circumvent the Workmen's Compensation laws of Arizona. This question was

thoroughly discussed in Chesin, and we agree with the court's conclusions in that case. Where employees of an independent contractor attempt to hold the owner or general contractor liable for on-the-job injuries on the basis of "retained control", the imposition of such liability would tend to frustrate the purposes of the Arizona Workmen's Compensation laws. Under well-recognized principles of indemnity the final burden of such liability would be cast back upon the employer. See Chesin Construction Co. v. Epstein, *supra,* and cases cited therein.

■ Plaintiffs next attempt to impose liability upon defendant by analogizing defendant's position to that of an architect hired to prepare plans and specifications and to supervise employees in the manner of doing the work. We have already discussed in detail the extent of the supervisory controls retained by defendant and have found them insufficient to justify the imposition of liability. Insofar as concerns the preparation of the plans and specifications, unquestionably the defendant could be held liable if the evidence had showed that through these specifications the defendant had directed plaintiffs' employer to do the work in an unreasonably dangerous manner. See Restatement (Second) of Torts Sec. 410 (1965). However, here the specifications did not require the contractor to use the "V" type method of trenching which was in use at the time of the cave-in.[4] As stated in comment b, Sec. 410, *supra,* "[The employer of an independent contractor] is not subject to liability for any harm caused by some improper method which the contractor, without any direction of his employer, adopts in doing the work."

■ Nor can liability be imposed upon defendant by analogizing defendant's duties to those of an owner or occupier of land and treating plaintiffs as business invitees as

---

4. In fact, plaintiffs contended that defendant's trenching specifications were being breached by the contractor at the time of the cave-in. If we assume that defendant's specifications were being breach-ed, this would not make defendant liable to plaintiffs for a dangerous method of operation adopted by their own employer in violation of the contract. See Chesin, *supra.*

contended by plaintiffs. While under the proper circumstances an owner or general contractor might have a duty to the employees of a subcontractor to warn such employees of known dangerous conditions and to use reasonable care to discover unknown dangerous conditions, this principle has no application here. First, as discussed previously herein, there is no showing that the defendant retained control of any part of the premises where the work was being performed. Second, the evidence clearly shows that plaintiffs were not injured by a previously existing dangerous condition of the premises, but rather, solely by the active conduct of the independent contractor in the use of the "V" method in digging the trench. Even if defendant had retained control of the premises, the evidence clearly shows that the dangerous condition was unknown to defendant, and was brought about and resulted in injury before defendant in the exercise of reasonable care, might have discovered the condition.

Plaintiffs' other theories of liability relating to "nondelegable duty" and "inherently dangerous activity" have been previously considered and rejected by several Arizona decisions involving the liability of an employer of an independent contractor to an employee of the independent contractor and thus need not be further discussed in this opinion. See Fluor Corp. v. Sykes, *supra;* Welker v. Kennecott Copper Co., *supra;* and Chesin Construction Co. v. Epstein, *supra.* Although these cases expressly rejected the "nondelegable duty" and "inherently dangerous activity" doctrines as not applicable to a situation involving an employee of the independent contractor, plaintiffs attempt to distinguish these decisions by reference to a provision in the permit issued by the City of Phoenix to defendant, claiming that this provision prevents any delegation by defendant to an independent contractor. The provision reads as follows:

"1. That the permittee assumes the responsibility and all liability for any injury or damage to said right-of-way, or to any person while using said right-of-way in a. lawful manner, caused by or arising out. of the exercise of this permit."

Aside from the fact that we do not believe that plaintiffs are within the class of plaintiffs described in the provision, it is clear that this indemnity provision merely provides for the assumption by defendant of the described liabilities which might otherwise fall upon the City, and certainly was not intended to create entirely new grounds of liability where no basis for liability previously existed.

Inasmuch as there was no evidence which would support a finding of liability, the trial court did not err in directing a verdict for the defendant.

The judgment of the trial court is affirmed.

EUBANK, P. J., and JACOBSON, J., concur.