823 P.2d 74

**Anthony E. LEWIS, Plaintiff–Appellee,**

v.

**N.J. RIEBE ENTERPRISES, INC., a corporation, Defendant– Appellant.**

**No. 1 CA–CV 88–364.**

Court of Appeals of Arizona, Division 1, Department B.

Dec. 18, 1990.

Review Granted June 11, 1991.

Michael C. Anderson, Bullhead City, for plaintiff-appellee.

Rake, Copple, Downey & Black, P.C. by Thomas J. Chamberlin, Phoenix, for defendant-appellant.

## OPINION

JACOBSON, Judge.

The primary issue in this appeal is whether a standard provision in an AIA construction contract making the general contractor responsible for safety on the construction project subjects the contractor to liability for injuries incurred by an independent subcontractor's employee.

### FACTUAL AND PROCEDURAL BACKGROUND

Defendant-appellant N.J. Riebe Enterprises, Inc. (Riebe) was the general contractor on the construction of an addition to the Mohave High School in Bullhead City. Plaintiff-appellee Anthony E. Lewis was employed by an independent carpentry subcontractor on the project, Mel Garges Carpentry. Lewis fell through a roof which was slightly pitched, with beams at four-foot intervals and 4' × 8' × ¾" plywood sheets nailed to the beams. The day before the accident, Michael Smith, Riebe's superintendent, advised Merrill Garges that the roof was improperly installed and would have to be redone because H-clips had not been utilized as required by the specifications. Garges met with three of his carpenters, including Lewis, to decide how best to remove the plywood sheets and replace them after installation of the H-clips. Lewis and another carpenter, Gary Clinton, began to redo the roof by pulling out the nails from each row of plywood sheets, installing the H-clips, and renailing that row of plywood.

Apparently, neither Merrill Garges nor any other Garges supervisor was present at the job site on the day of the accident.[1] Early that day, Lewis overheard a conversation between Smith and two of Garges' carpenters regarding the dislodging of the plywood sheets by banging them from below with 2 × 4"s. Following this conversation, other Garges employees began dislodging the plywood sheets from below while Lewis and Clinton remained on the roof. When the first few rows of plywood sheets had been dislodged, Lewis and Clinton began installing the H-clips and renailing the plywood back to the beams.

After working for a few hours, Lewis and Clinton walked across the dislodged plywood to a water jug on the roof. On the way back, Lewis stepped on a sheet of plywood that was not solidly placed on a beam; the sheet flipped up, and Lewis fell through the roof onto the concrete below, fracturing his wrist.

Before trial, Riebe moved for summary judgment, arguing that it owed no duty of care to Lewis, the employee of an independent subcontractor. The trial court denied this motion, as well as two motions for directed verdict made by Riebe on this basis. The jury determined Lewis to be 35% negligent and found he had sustained damages in the sum of $225,000. After the trial court denied Riebe's motions for judgment notwithstanding the verdict and for new trial, again made on the issue of lack of duty, Riebe appealed.

### DISCUSSION

In order for Lewis to recover from Riebe, Lewis first must prove that Riebe owed a duty to him. *Citizen's Utility, Inc. v. Livingston*, 21 Ariz.App. 48, 51, 515 P.2d 345, 348 (1973). Whether Riebe

---

1. Michael George, a Garges supervisor, testified that he was present at the job site the day of Lewis' accident. However, we view the evidence in the light most favorable to sustaining the jury's verdict. *Yano v. Yano*, 144 Ariz. 382, 384, 697 P.2d 1132, 1134 (App.1985).

owed a duty to Lewis is a question of law for the court. *See generally Markowitz v. Arizona Parks Bd.,* 146 Ariz. 352, 706 P.2d 364 (1985). *See also Reber v. Chandler High School Dist. # 202,* 13 Ariz.App. 133, 135, 474 P.2d 852, 854 (1970) (liability for negligent exercise of retained supervisory powers attaches only when a duty has been created by the reservation of control over manner in which the details of the work are performed); *Wilson v. Portland General Electric Co.,* 252 Or. 385, 448 P.2d 562, 567 (1968) (question whether owner retained sufficient control under provisions of contract one of law for the court).

■ An analysis of duty in the construction field begins with the well-recognized rule that, ordinarily, a general contractor is not liable for injuries sustained by an employee of an independent subcontractor. *Pruett v. Precision Plumbing, Inc.,* 27 Ariz.App. 288, 291, 554 P.2d 655, 658 (1976); *Restatement (Second) of Torts* § 409 (1965). However, a general contractor may be subject to liability for such injuries if it retains control over the subcontractor's work. *Chesin Constr. Co. v. Epstein,* 8 Ariz.App. 312, 314, 446 P.2d 11, 13 (1968). This "retained control" exception is set forth in § 414 of the *Restatement* (§ 414), which provides:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

■ The retained control exception contemplated by § 414 is not triggered by a contractor's retention of control over the premises, but rather by retention of control over the manner in which the work is done—that is, control over the method of doing the details of the work. *Cordova v. Parrett,* 146 Ariz. 79, 82, 703 P.2d 1228, 1231 (App.1985); *Mason v. Arizona Public Serv. Co.,* 127 Ariz. 546, 550, 622 P.2d 493, 497 (App.1980). Such retention of control over the method and manner of the work must relate to the details of the work rather than merely the supervisory and inspection rights generally reserved by a general contractor to ensure that the results obtained conform to the specifications and requirements of the construction contract. *Reber,* 13 Ariz.App. at 135, 474 P.2d at 854. The right to program or direct the sequence of the work and reservation of the right to prescribe changes or alterations are not indicative of the right to control the details of the method or manner of doing the work. *German v. Mountain States Tel. & Tel. Co.,* 11 Ariz.App. 91, 95, 462 P.2d 108, 112 (1969); *Koepke v. Carter Hawley Hale Stores, Inc.,* 140 Ariz. 420, 425, 682 P.2d 425, 430 (App.1984). As generally explained in comment (c) to § 414:

> In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

Riebe argues that it did not retain sufficient control over the roof construction to subject it to liability to Lewis under § 414. Lewis argues that there was sufficient evidence to support the jury's verdict based either on (1) Riebe's actual control of the roof construction on the day of the accident, or (2) Riebe's retained control of safety precautions on the project. We address each theory in turn.

*Actual Control*

■ Lewis first argues that, because no Garges supervisor was present at the job site on the day of the accident, Riebe, *a fortiori,* controlled the Garges employees

in the method and manner of their performance of the details of the work. The only evidence cited to support this assumption is the following testimony from Clinton:

> Q. Who was directing your activities on the day of the accident?
>
> A. I couldn't say positively, but I would say that it would have to have been the superintendent from Riebe because the Garges foreman wasn't there, he was the general contractor on it for us, *somebody would have to instruct us.*

(Emphasis added.) This is insufficient evidence that Riebe actually controlled the work on the day of Lewis' accident. While Clinton testified that Smith directed his activities that day,[2] he did not specify any of Smith's directions, merely opining that "somebody would have to [have] instruct[ed] us."

■ Lewis next argues that Riebe had actual control of the roof construction that day based on the conversation between Smith and the Garges carpenters regarding the banging of the plywood sheets from below with 2 × 4"s. This argument is fatally flawed, however, because the record is simply devoid of evidence that Smith directed the Garges employees to use the 2 × 4" method. Lewis testified:

> Q. So, all you heard Mike Smith in conversation was a conversation concerning removing of the plywood, correct?
>
> A. And the two-by-four method.
>
> Q. He wasn't the one who instructed anyone to remove it by two-by-fours, though, was he?
>
> A. Not that I recall.
>
> Q. All you understand from your overhearing the conversation is that the method of doing it was possibly being discussed?
>
> A. Yes.
>
> Q. By someone from Mel Garges with Mike Smith?
>
> A. Yes.

At most, this evidence established that Smith was aware that the 2 × 4" method was being used. This is insufficient to establish Riebe's actual control over the work under § 414 so as to subject it to liability for Lewis' injuries. *See German,* 11 Ariz.App. at 96, 462 P.2d at 113 (general contractor is not subject to liability for harm caused by improper method which subcontractor, without any direction by general contractor, adopts in doing the work); *Morris v. City of Soldotna,* 553 P.2d 474, 479 (Alaska 1976) (evidence that general contractor's superintendent questioned subcontractor's employee about painting procedure, but did not instruct employee that a particular method be used, was insufficient to show that general contractor actually controlled subcontractor's work).

We thus find that there was insufficient evidence of actual control by Riebe to subject it to liability under the retained control exception.

*Control of Safety Precautions*

■ Lewis argues that Riebe is liable for his injuries because contractual provisions provided that Riebe retained control over safety precautions on the construction project. Riebe's general contract with the school district contained the following provisions from the standard American Institute of Architects' construction contract:

10.1 SAFETY PRECAUTIONS AND PROGRAMS

10.1.1 The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the Work.

10.2 SAFETY OF PERSONS AND PROPERTY

10.2.1 The Contractor shall take all reasonable precautions for the safety of, and shall provide all reasonable protection to prevent damage, injury or loss to:

.1 all employees on the Work and all other persons who may be affected thereby....

\* \* \* \* \* \*

10.2.3 The Contractor shall erect and maintain, as required by existing condi-

---

**2.** Although Clinton testified that he could not remember the superintendent's name, neither party argues that this superintendent was someone other than Michael Smith.

tions and progress of the Work, all reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent utilities.

\*　\*　\*　\*　\*　\*

10.2.6 The Contractor shall designate a responsible member of his organization at the site whose duty shall be the prevention of accidents. This person shall be the Contractor's superintendent unless otherwise designated by the Contractor in writing to the Owner and the Architect.

As we have seen, the control necessary to subject a general contractor to liability for injuries to employees of subcontractors must go to the manner in which the details of the work are performed. Does the safety responsibility provision of the AIA contract invest sufficient control as to the details of the work so as to subject Riebe to liability? We believe not for several reasons. First, the contractual right to control safety is akin to the right to supervise all phases of the construction, a contract right generally reserved to the general contractor. With rare exception, this contract obligation to undertake "direct supervision" does not equate to the retention of control necessary to subject the general contractor to liability. As this court noted in *Chesin:*

> "There are countless decisions of appellate courts construing stipulations in contracts ... relating to the right of the owner 'to give directions'—'orders' and 'instructions' regarding the work as it progresses; and phrases such as 'in accordance with instructions'—'as directed'—'[i]n such manner as shall be directed'—'under supervision of owner's agent, as he may direct'—and 'under the direction and supervision', are frequently construed. In all of the cases examined, some of which are cited, it is held that such phrases do not relate to the method or manner and do not govern the details or the physical means by which the work is to be performed. The Supreme Court

of the United States has so held in two cases directly in point."

8 Ariz.App. at 315, 446 P.2d at 14, *quoting Moore v. Phillips,* 197 Ark. 131, 120 S.W.2d 722 (1938) (citations omitted).

■ Second, a distinction must be made between the "right" to control safety and the "duty" to do so, a breach of which may result in liability. This is more than an exercise in semantics. Being given the right to control safety, like the right to supervise, does nothing more than allow the general contractor to prohibit or correct unsafe practices of its subcontractors. However, the negligent exercise of that right does not impose liability for an unsafe condition created by the subcontractor which results in injury to employees of that subcontractor. As one authority indicates:

> He [general contractor] is not liable to the employees of a subcontractor, for example, for a failure to examine appliances supplied to them by their own employer, or for a dangerous method of operation adopted by their own employer, the danger of which is not caused by some condition of the premises for which he is responsible.

Annotation, *General Contractor's Liability for Injuries to Employees of Other Contractors on the Project,* 20 A.L.R.2d 868, 871 (1951).

This rule is in accord with great weight of authority dealing with "right v. duty" in construction law. *See Wallach v. United States,* 291 F.2d 69 (2d Cir.1961); *Gallagher v. United States Lines Co.,* 206 F.2d 177 (2d Cir.1953), *cert. denied,* 346 U.S. 897, 74 S.Ct. 221, 98 L.Ed. 398 (1953); *Trecartin v. Mahony–Troast Constr. Co.,* 18 N.J.Super. 380, 87 A.2d 349 (1952); *Potter v. City of Kenosha,* 268 Wis. 361, 68 N.W.2d 4 (1955). Moreover, other authorities support the proposition that the general contractor's contractual responsibility for safety does not equate to sufficient retained control to make the general contractor liable to employees of a subcontractor. *Cummings v. Hoosier Marine Properties, Inc.,* 173 Ind.App. 372, 363 N.E.2d 1266 (1977); *Samodai v. Chrysler Corp.,* 178 Mich.App. 252, 443 N.W.2d 391 (1989);

*West v. Morrison–Knudsen Co., Inc.,* 451 F.2d 493 (9th Cir.1971); *Morris v. City of Soldotna, supra.* But see *Kelley v. Howard S. Wright Constr. Co.,* 90 Wash.2d 323, 582 P.2d 500 (1978); *Smith v. United States,* 497 F.2d 500 (5th Cir.1974).

Finally, we distinguish the "safety retention" case of *Fluor Corp. v. Sykes,* 3 Ariz. App. 211, 413 P.2d 270 (1966) in the same manner it was distinguished in *Chesin:* in *Fluor,* there was substantial evidence that the safety violation which resulted in the injury to the subcontractor's employee had been taken over specifically by the general contractor such that the general contractor had control of the details of that work. Contrarily, there is no such evidence in this case.

Our holding is also in accord with sound public policy in general and Arizona law on § 414 and retained control in particular. *Chesin*'s analysis of the policy considerations is equally valid here:

> The decision to deny liability in this action is prompted not only by the weight of decided cases in this area of law, but also by a consideration of what would be the practical effect if retention of control to the extent evidenced in this case were to give rise to tort liability on the part of the employer. Such a rule would mean that larger contractors, who have no economic need to subcontract out phases of their work, would ordinarily be subject only to Workmen's Compensation premiums without substantial threat of tort liability for failure to properly supervise the work. The workmen in the employ of such a large employer would be at a disadvantage insofar as employees working for smaller entrepreneurs are concerned. We see no additional hazard to workmen inherent in the subcontracting of work, in the manner done here, to justify any such radical distinction in liability.

8 Ariz.App. at 318, 446 P.2d at 17.

As further support for his argument that Riebe retained sufficient control under § 414 by its control of safety precautions on the project, Lewis points to Smith's testimony that he oversaw the general working conditions for safety and had the authority to stop work which he felt was dangerous. However, this testimony merely reaffirms and is consistent with the terms of the general contract, which we have already found to be insufficient to establish that Riebe owed Lewis a duty of care. In any event, as discussed above, the right of a general contractor to stop a subcontractor from proceeding with work if dangerous practices are observed does not carry with it liability to an employee of the same subcontractor causing the dangerous condition. *Chesin,* 8 Ariz.App. at 317, 446 P.2d at 16; *Fresquez v. Southwestern Indus. Contractors & Riggers, Inc.,* 89 N.M. 525, 554 P.2d 986, 992–93 (App.1976).

## CONCLUSION

As a matter of law, Riebe owed no duty of care to Lewis because neither the general contract nor the conduct of the parties manifests any retention or exercise of the type of control required to subject Riebe to liability under § 414. Therefore, we need not reach the remaining issues raised on appeal. The judgment of the trial court is reversed and the matter remanded with instructions to enter judgment in favor of Riebe.

VOSS, P.J., concurs.

KLEINSCHMIDT, Judge, dissenting.

I respectfully dissent. I believe that the contractor in this case accepted the responsibility for seeing that the work on the roof was performed safely.

The contract provisions imposed a positive duty on the general contractor to initiate safety programs and take reasonable precautions for the safety of all employees on the work. The general contractor's supervisor, Michael Smith, had been designated as the contractor's employee for initiating and overseeing job safety. At trial, he conceded that he had responsibility for overseeing the general working conditions for safety. He knew that he had the authority to stop work being done in a dangerous manner.

Smith was concerned about the way the job of removing the plywood roof was being done, and because he feared that some of the plywood sheets might fall, he did not let anyone work underneath the roof while the job was in progress. The reason that he did not try to stop the work was not because he felt he lacked safety authority or responsibility, but only because he did not feel it was unsafe except to people who were working below.

There was evidence that after the plywood was dislodged, it was left lying in random fashion on the roof while the workers proceeded to reinstall it. Cecil Hickman, a safety engineer, testified that leaving the plywood sheets dislodged on the roof where employees were walking was unsafe. This, taken in conjunction with the evidence that the general contractor retained control of safety measures and could have curtailed an unsafe procedure, is sufficient to support the verdict. *See* 2 Construction Law (MB) ¶ 10.04[2] at 10–68.

I do not see a distinction between this case and *Fluor Corp. v. Sykes*, 3 Ariz.App. 211, 413 P.2d 270 (1966). In *Fluor*, a subcontractor's employee was killed as the result of welding in a shaft that was not properly ventilated. Division Two of the court of appeals concluded that the general contractor could be liable to the worker's survivors because it had retained control of the work. The evidence showed that the general contractor had provided each subcontractor with a pamphlet noting that safety on the project was the general contractor's responsibility. Shortly before the accident, the general contractor had received a warning bulletin from the government, for whom the job was undertaken, concerning a casualty as the result of insufficient ventilation at a welding site. The general contractor took no action as a result of having received the warning.

The court relied on section 414 of the Restatement (Second) of Torts which provides:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for

whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

It went on to quote comment a to section 414 to the effect that if a contractor retains control over job safety, he may be liable for injuries that result from a failure to supervise with care. The court also observed that under comment c, the general contractor would not be liable unless it retained some degree of control over the manner in which the work was done. It is not enough if the contractor "merely has the general right to order the work stopped or resumed ... [t]here must be such a retention of a right of supervision that the [sub]contractor is not entirely free to do the work in his own way."

As I have already observed, in this case the general contractor's supervisor conceded that he could stop work that was being performed in a dangerous manner. The only reason he did not do so in this case was because he did not consider the manner in which the job was being done to be unsafe. Even if he was only referring to the manner in which the roof was being removed when he said this, it is a concession on his part that had he felt that *any part* of the job was being done in an unsafe manner he could have ordered it stopped. This is more than "merely a general right to order the work stopped." It is, in essence, the right to require the work to be done in a safe manner.

The majority distinguishes *Fluor* with the comment that in *Fluor* there was substantial evidence that the details of the work from which the injury ensued had been taken over by the general contractor. I do not see that in *Fluor*. In *Fluor*, there was an emphatic notice to subcontractors of the general contractor's responsibility for safety, but there was nothing to suggest the general contractor actually had anything to do with the way the welding was performed. The general contractor's potential liability was predicated only upon the retained right to supervise job safety and the fact that the general contractor had inspectors on the site who could have observed the unsafe welding practice that caused the accident.

The majority relies on *Chesin Constr. Co. v. Epstein,* 8 Ariz.App. 312, 446 P.2d 11 (1968). In that case, the general contractor had the right to stop a subcontractor from proceeding with work in an unsafe manner, but the contract documents placed the responsibility for safety precautions on the subcontractor. The court in *Chesin* distinguished *Fluor* on this basis alone.

The other cases upon which the majority relies for the proposition that the contractual responsibility for safety does not equate with sufficient retained control to make the general contractor liable for injuries to employees of a subcontractor are not particularly persuasive. For example, in *Cummings v. Hoosier Marine Properties, Inc.,* 173 Ind.App. 372, 363 N.E.2d 1266 (1977), there was no contractual responsibility for safety placed on the defendant developer, the defendant developer did not acknowledge any responsibility for safety, and there was no evidence that the developer had any supervision or control of the work. The opinion in *Samodai v. Chrysler Corp.,* 178 Mich.App. 252, 443 N.W.2d 391 (1989), fails to spell out the provisions of the contract at issue with sufficient specificity to shed much light on the issue. In *West v. Morrison–Knudsen Co.,* 451 F.2d 493 (9th Cir.1971), while the general contractor had a contractual responsibility for safety imposed on it by virtue of its agreement with the government, there was no allegation that the general contractor in any way had any right to control the subcontractor's employees. Finally, in *Morris v. City of Soldotna,* 553 P.2d 474 (Alaska 1976), the contract, unlike the agreement in the case before us, imposed no positive duty on the general contractor to oversee safety on the job.

The contractor in this case has advanced other arguments as to why it ought not be liable for this injury, even if the law is as I have stated it. Since my view does not prevail, it is unnecessary for me to deal with those arguments.