491 P.2d 497

### Earl E. HAMMER, Appellant,

v.

### BELL CONSTRUCTION CO., an Arizona corporation, et al., Appellees.

### No. 1 CA–CIV 1138.

Court of Appeals of Arizona,
Division 1,
Department A.

Dec. 15, 1971.

Rehearing Denied Dec. 29, 1971.

Review Denied Jan. 25, 1972.

Skousen, McLaws & Skousen, P. C., by Richard E. Skousen, Mesa, for appellant.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by Ralph Hunsaker, Phoenix, for appellee Bell Comstruction Co.

Norman E. Green, Phoenix, for appellees Riggs.

STEVENS, Presiding Judge.

The appellant, who was the plaintiff in the Superior Court, received a substantial judgment against the appellees. The trial court granted the appellees' motion for a new trial. In the order granting the new trial the trial court specified that the order was based upon the court's failure to instruct on the appellees' theory relative to the applicability of § 414 of the Restatement of Torts 2d, hereinafter referred to as § 414. The instant appeal was taken from the order granting the new trial.

As is often the situation in personal injury cases, there was a conflict in the evidence. The conflict was resolved by the jury in favor of the plaintiff and in this

opinion we view the evidence in favor of the plaintiff. This statement does not mean that Bell was not entitled to instructions on its theory of the case if the evidence it offered, even though in conflict with other evidence, supported such instructions provided that the instructions were appropriate.

Precision Plumbing of California, a California corporation, was the owner of land in Phoenix upon which an apartment building was being constructed. This company was a party defendant in the Superior Court. It prevailed on its motion for a directed verdict. Initially the plaintiff appealed from the judgment entered pursuant to the granting of the motion for a directed verdict and the appeal was abandoned.

Precision employed Bell Construction Co. as its general contractor. Bell's owner was Harry Lincis. Bell's responsibility was that of supervision and coordination of the work of the several subcontractors. In actuality each of the subcontractors, as they are designated in this opinion, held a direct contractual relationship with Precision. The appellee, William A. Riggs, was a qualified concrete contractor and held the contract for the concrete work in connection with the construction. He was one of several subcontractors all of whom were specialists in their respective fields.

The plaintiff was a telephone installer employed by the Mountain States Telephone and Telegraph Company, as it was formerly known. The telephone company responsibility was similar to the subcontractor status occupied by Riggs. The plaintiff's duties were to install telephone wires in the various apartments at the appropriate stage of construction. He was so engaged when he sustained the injuries in question.

There was a courtyard in the center of the apartment building. At the level of the second floor there was a poured concrete walkway designed to give access to the second floor apartments from the courtyard side of the several apartments.

The walkway was poured onto 4′ by 8′ pieces of plywood which were supported underneath by a series of construction supports known as span-alls. When the forms for the concrete pour were in place, the plywood extended approximately three feet beyond the pour toward the courtyard. We will refer to this area as the "overhang." Riggs's men rested their weight on the overhang as they performed finishing work following the pour.

There was evidence that within a day or so after the completion of the pour the various workmen for the several subcontractors could and did use the second floor concrete walkway in performing their construction responsibilities. There was conflicting evidence that some of the workmen walked on the overhang even after it was proper to walk on the concrete walkway. It was necessary for the concrete to cure for several days before the undersupports and the plywood could be removed.

Before we reach the accident we need to focus attention upon Bell's and Lincis's contact with this construction. Lincis was the owner of Bell and was the only Bell employee on the job. He had a trailer parked outside of and adjacent to the construction which he used as his office. He was at the construction site a substantial part of every working day and a portion of that time was spent in his trailer office.

Lincis testified that under his contract with Precision, the owner, he had the overall supervision of the construction. He testified that if he had seen unsafe practices on the part of any of the subcontractors he would have said something about these unsafe practices. He denied so instructing the subcontractors and there was a conflict as to the evidence in relation to this matter. Lincis had the authority to direct the manner and the means of the work which the several subcontractors performed and stated that he did not tell any of the subcontractors how to perform their work as they were all qualified in their respective fields. As we read the record there was evidence that such instructions had been given. It was important that Lincis coordinate the work of the several subcontractors for the purpose of keeping the project moving smoothly.

The accident in question occurred on the morning of 14 February 1967. By that date the second floor concrete walkway had cured to the point that the undersupport could be removed. The plywood, after its removal, was used in connection with the construction of the roof of the apartment building and was the property of Precision.

There was evidence that a few days before 14 February Lincis instructed Riggs to remove the supports and the plywood on the 14th. It was denied that the exact manner of removal was directed, that is whether upon the removal of the supports the plywood was to be removed immediately. When the supports were removed the plywood would tend to adhere to the underside of the second floor walkway.

The plaintiff was on the premises on 13 February. There was evidence that on the 13th Lincis showed the plaintiff and a fellow worker from the telephone company where the second floor phone installations were to be made.

The evidence established that en route to the place of the phone installations Lincis and the two telephone company men, including the plaintiff, walked over the plywood overhang which at that time was safe due to the presence of the supporting span-alls. Lincis denied that he accompanied the two telephone men over the plywood overhang. The jury resolved that issue in favor of the plaintiff. On the 13th the plaintiff was aware of the presence of the structural support under the plywood.

On the morning of the 14th Lincis was in the courtyard of the apartment building and he went to his trailer office before any of the workmen commenced work for that day. He was not present within the courtyard at the time of the accident or at the time of the performance of any of the work immediately prior to the accident. Riggs's men, after Lincis had gone to his office, started to remove the undersupports and removed several of them without immediately removing the then clinging and unsupported plywood. The plaintiff, not being aware of this new hazard, stepped on one of the pieces of plywood. It broke loose from the concrete walkway, the plaintiff fell and he was seriously injured. The defenses of contributory negligence and assumption of risk were presented to the jury and resolved in the plaintiff's favor.

A plaintiff's verdict was returned against both Bell and Riggs. A judgment was entered thereon. Motions for judgment notwithstanding the verdict and for a new trial were made. Rule 59(m) of the Rules of Civil Procedure, 16 A.R.S., requires that the trial court specify " * * * with particularity the ground or grounds on which the new trial is granted." We quote the trial court's formal written order.

"IT IS HEREBY ORDERED denying both defendants motion for judgment notwithstanding the verdict and granting both defendants' motions for new trial upon the following grounds;

"That the Court erred in the charge to the jury, in that the Court refused said defendants Requested Instruction No. 13 and failed to give an Instruction to the jury on the law as stated in Restatement of Torts 2d, Section 414, Comments a, b and c." (Emphasis added.)

The plaintiff tendered his Requested Instruction No. 10, hereafter merely referred to as Instruction No. 10. The instruction was the subject of an objection by Bell and was modified over the objection of the plaintiff. After the modification the trial court gave the modified instruction over the objection of Bell and Riggs. The instruction given follows:

"You are instructed that a general contractor who retains general supervision or overall control of a construction site has a duty to exercise reasonable care to keep the premises in a reasonably safe condition for workmen who are invited thereon to perform their work or to warn those workmen of any danger which would unnecessarily expose them to danger or injury unless the condition is open and obvious, which was actually known to the general contractor or which could have been discovered by reasonable inspection."

In its formal exceptions to Instruction No. 10 Bell urged, in part:

"And the last portion of the instruction which says, 'or which could have been discovered by reasonable inspection,' should be worded along the lines of 414, that they only have to give the notice which is stated in the instruction when they knew or should have known that the condition existed as created by the person who was under their control."

In our opinion there is merit to Bell's contentions in this respect. We cannot say that the resulting prejudice was of sufficient gravity to require the granting of a new trial and apparently the trial court so agreed because this was not stated in the order granting the new trial. Had the language which Bell suggested been used, then that language would apply to the fact that Lincis led the plaintiff across the overhang on the 13th knowing that the supports would be removed on the 14th and knowing that it was contemplated that the plaintiff would return on the 14th to work on the second floor.

Bell's tendered Requested Instruction No. 13, herein referred to as Instruction No. 13, was referred to in the order granting the motion for new trial. We quote the requested instruction:

"You are instructed that one who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

"You are instructed that this rule only applies if the principal knows or by the exercise of reasonable care should know, that the subcontractors work is being done in an unreasonably dangerous manner and has the opportunity to prevent it by exercising the power of control which he has retained in himself, or if he knows, or in the exercise of reasonable care should know that the subcontractor has careless- ly done his work in such a way as to create a dangerous condition and fails to exercise reasonable care either to remedy it himself or by the exercise of his control cause the subcontractor to do so. This rule does not apply where it is merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations.

"Restatement of Torts 2d, 414, Comments a, b and c."

The trial court sustained the plaintiff's objections to Instruction No. 13 and refused to give the instruction. The first paragraph of Instruction No. 13 is an exact copy of § 414. It appears to this Court that it would have been more easily understood if the words "general contractor, in this case, the Bell Construction Co." had been substituted for the word "employer." In the usual context of the word "employer" the plaintiff's employer was the telephone company. In our opinion it is often difficult to word an instruction in the exact language of a recognized text or the exact language of case law legal principles and thereby secure an instruction which can be clearly understood by a jury on one reading by the trial court. At the same time it may be dangerous to deviate from the exact language of a recognized text or from decided cases. Hence the privilege of arguing the meaning of an instruction.

The issues on this appeal are framed by a comparison of Instruction No. 10 and Instruction No. 13.

In relation to § 414 the following Arizona cases are of interest. Welker v. Kennecott Copper Company, 1 Ariz.App. 395, 403 P.2d 330 (1965); Fluor Corporation, Ltd. v. Sykes, 3 Ariz.App. 211, 413 P.2d 270 (1966), modified in other particulars on rehearing by a supplemental opinion found in 3 Ariz. App. 559 and 416 P.2d 610 (1966); and Chesin Construction Co. v. Epstein, 8 Ariz. App. 312, 446 P.2d 11 (1968). The appellees strongly rely on the first Fluor opinion wherein § 414 and the three comments

thereunder are quoted in full. We see no need to again quote the full text in this opinion.

There are factual differences between the above cases and the case at bar. In Welker the workman met his death while an employee of a party whose work contributed to the dangerous condition. The suit was against Kennecott by reason of its retained control over the job.

In Fluor the deceased workman was at work for his employer, a subcontractor, who could have exercised greater care and Fluor was sued because of its position of general overall control.

The Chesin Construction case, it seems to us, is more nearly similar in the relationship between the injured workman and Chesin Construction, the latter being the general contractor. The case turned upon the area and extent of the control exercised and available to the general contractor.

The plaintiff's objections to Instruction No. 13 are not included in the reporter's transcript, the trial court apparently having followed the usual and accepted practice of hearing argument on the instructions then making a formal record. So we turn to the plaintiff's memorandum in opposition to the after judgment motions and to the plaintiff's briefs in this Court. The plaintiff urged and urges that Instruction No. 13 is not a full statement of all of the applicable portions of § 414 and more particularly the comments thereto with the result that the instruction was misleading. We agree that the comments were not well covered, a difficult task to be sure.

In the order granting the motion for new trial the trial court stated as one of its reasons it " * * * failed to give an instruction to the jury on the law as stated in Restatement of Torts 2d, section 414, comments a, b and c." In our opinion there was no obligation on the part of the trial court to prepare its own instructions on this portion of the Restatement and the trial court had the right to rely upon the giving or the refusing of the instructions tendered on behalf of the defendants.

While appellate courts are more reluctant to reverse the granting of a motion for new trial than they are the denial of a motion for new trial, we hold that the granting of a motion for new trial was not appropriate in the case now before the Court.

This cause is reversed with instructions to reinstate the judgment in favor of the plaintiff.

CASE and DONOFRIO, JJ., concur.