554 P.2d 655

**Richard D. PRUETT, by and through his guardian ad litem, Estelle Johnson, Appellants,**

**v.**

**PRECISION PLUMBING, INC., an Arizona Corporation, and H. R. Stewart dba Stewart Construction Company, Appellees.**

**No. 1 CA–CIV 2902.**

Court of Appeals of Arizona,
Division 1,

Department B.

Sept. 9, 1976.

Cunningham, Goodson & Tiffany, Ltd., by James P. Cunningham, James W. Ryan, Phoenix, for appellants.

Charles Ripps, Phoenix, for Precision Plumbing.

J. Stephen Mullen, Burch, Cracchiolo, Levie, Guyer & Weyl, by Brian Kaven, Phoenix, Oliver H. Maud, Jr., Casa Grande, for Stewart Const. Co.

## OPINION

WREN, Judge.

This appeal arises from the granting of defendants' motion for a directed verdict in a tort action for personal injuries sustained by the plaintiff-appellant, Richard D. Pruett, in a fall from the roof of an office building during its construction. At the time of the accident, Pruett was employed by Embe Construction Company, the masonry and plastering subcontractor on the job. Pruett filed suit against the owner of the property, Precision Plumbing, Inc., and the general contractor, Stewart Construction Company, alleging that the defendants negligently maintained the premises during construction. We have concluded that the motion was properly granted.

■■ A directed verdict will be granted only when all the evidence viewed in a light most favorable to the party opposing the motion is insufficient to support a contrary verdict, or so weak that the court would feel compelled to set aside such a verdict on a motion for a new trial.

*Brand v. J. H. Rose Trucking Company,* 102 Ariz. 201, 427 P.2d 519 (1967); *Revels v. Pohle,* 101 Ariz. 208, 418 P.2d 364 (1966); *Peterson v. Salt River Project Agr. Imp. & Pow. Dist.,* 96 Ariz. 1, 391 P. 2d 567 (1964). On appeal, the evidence and any reasonable inferences to be drawn therefrom must also be viewed most strongly in favor of the appellant. *Tanner v. Levie,* 105 Ariz. 149, 460 P.2d 995 (1969).

The uncontroverted facts were that Pruett was plastering the north wall of a penthouse situated on the roof of the building at the time of his fall. The penthouse was built such that there was only a 20 inch wide space between the north wall of the penthouse and the outside wall of the building. This outside wall rose 24 inches above roof level. The wall Pruett was plastering was approximately 9 feet high and in order to reach the top, Pruett stood on a two foot high sawhorse fitted with a flat board on top. While standing atop this sawhorse in the 20 inch wide space, Pruett lost his balance and fell four stories to the ground, sustaining multiple serious injuries.

Pruett's theory for imposing liability on Precision Plumbing and Stewart is predicated upon the common law duties of owners and occupiers of land, and of employers of independent contractors exercising retained control over the work, and upon the statutory duties embodied in the regulations enacted pursuant to the Occupational Safety and Health Act, 29 U.S.C. § 651 et seq.

## DUTY OF OWNERS AND OCCUPIERS OF LAND

 The Restatement of Torts 2d § 343 sets forth the duties owed to invitees by a possessor of land:

"§ 343. Dangerous Conditions Known to or Discoverable by Possessor

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger."

Both Stewart and Precision Plumbing owed this duty to employees of the subcontractor; Stewart because of his capacity as general contractor and Precision Plumbing because it remained in possession through an owner's representative whose duties were much the same as the general contractor. (See discussion infra.)

 As noted in § 343, liability is imposed upon the possessor of land only if he should reasonably expect that the invitees will not appreciate the danger or will fail to protect themselves against it. *Murphy v. El Dorado Bowl, Inc.,* 2 Ariz.App. 341, 409 P.2d 57 (1965). Generally, the duty can be performed by giving a warning to the supervisor of the employees. *Citizen's Utility, Inc. v. Livingston,* 21 Ariz.App. 48, 515 P.2d 345 (1973). Section 343 A(1) of the Restatement further qualifies the duty owed:

"§ 343 A. Known or Obvious Dangers

(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them unless the possessor should anticipate the harm despite such knowledge or obviousness."

The undisputed facts were that Embe's foreman, Bill Lyons, was well aware of the dangers involved in plastering the north wall of the penthouse and that he had discussed the difficulties involved and scaffolding problems with Stewart and the owner's representative, Jerry Poziombko, a day or two before the accident. Both Stewart and Poziombko testified that they

understood that the plasterers would erect scaffolding before attempting to plaster the north wall. Lyons could recall only that scaffolding was discussed but not what was finally decided. Neither Stewart nor Poziombko was aware that the plastering had begun on the north wall before the accident.

■ It is apparent that both Stewart and Precision Plumbing had performed their duties as defined by the Restatement. Embe and its employees were fully apprised of the dangerous condition on the land. It was an open and obvious danger and Stewart and Precision Plumbing had no reason to believe that the plasterers would fail to protect themselves. It was their clear understanding that scaffolding would be erected before the plastering job would be undertaken, and they had no knowledge of the decision by Embe to proceed without scaffolding.

## DUTY OF EMPLOYER OF INDEPENDENT CONTRACTOR

■ The testimony at trial established that Embe worked as an independent contractor; that is, neither Stewart nor Precision Plumbing had any right to control the method or manner of doing the work, but rather had the right to direct only the sequence of the work and the end result. *German v. Mountain States Telephone and Tel. Co.,* 11 Ariz.App. 91, 462 P.2d 108 (1969). Generally an owner or general contractor is not liable for the negligence of an independent subcontractor. *Citizen's Utility, Inc. v. Livingston,* supra; *German v. Mountain States Telephone and Tel. Co.,* supra; *Chesin Construction Co. v. Epstein,* 8 Ariz.App. 312, 446 P.2d 11 (1968); *Welker v. Kennecott Copper Company,* 1 Ariz.App. 395, 403 P.2d 330 (1965). However, Pruett argues that Stewart and Precision Plumbing retained such control over the subcontractors on the job as to give rise to a duty to keep the premises safe.

■ Although Precision Plumbing argued that its duty was only that owed by a landowner to an invitee, we must disagree.

We believe the evidence demonstrates that Precision Plumbing through its owner's representative functioned in much the same capacity as a general contractor. Stewart and Poziombko jointly supervised the job. Therefore, even though Stewart actually employed Embe as a subcontractor, Precision Plumbing functioned as an employer of the subcontractors as well and therefore owed the same duties to the subcontractors as Stewart owed.

The Restatement of Torts 2d § 414 sets out the duty owed by the employer of an independent contractor:

"§ 414. Negligence in Exercising Control Retained By Employer

One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."

The comments to this section define what is meant by retained control and comment (b) specifically notes that § 414 is usually applied to situations where a general contractor subcontracts all or part of the work but superintends the entire job. Comment (c) is particularly instructive on the degree of retained control:

"c. In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a

right of supervision that the contractor is not entirely free to do the work in his own way."

It was established by the testimony that neither Stewart nor Precision Plumbing controlled either the method or details of the plastering work. Pruett maintains, however, that they have retained control over the safety measures to be employed on the job and therefore can be held liable under § 414.

In *Fluor Corporation v. Sykes*, 3 Ariz. App. 211, 413 P.2d 270 (1966), the Court of Appeals found that there was a jury question on a general contractor liability for the death of an employee of a subcontractor. Although the welding subcontractor was an independent contractor, the Court found that the general contractor had specifically assumed the responsibility for all safety precautions on the job. This retained control over safety measures was held sufficient to give rise to the duties set out in § 414.

In the instant case, although there was no written policy assigning responsibility for safety measures, Pruett points to certain evidence as showing this retained control. He established that during the course of construction, Stewart had had erected a temporary stairway equipped with guardrails for access to the upper floors of the building. In addition, Stewart put up temporary guardrails on the landings of the floors. Poziombko assisted in the installation of these safety devices. Stewart and Poziombko also testified that they erected a barrier at either end of the north wall of the penthouse to prevent access to that hazardous area. Moreover, the subcontract agreement with Embe was silent regarding responsibility for safety although it did require that Embe supply and construct all its own scaffolding. These facts, Pruett asserts, demonstrate the retained control over safety precautions and therefore Stewart and Precision Plumbing owed a duty to render the north side of the building safe for the subcontractors.

The duties of a general contractor to keep the premises safe for the use of the various subcontractors is discussed in an American Law Reports annotation entitled "General contractor's liability for injuries to employees of other contractors on the project.", 20 A.L.R.2d 868 (1951) and states, inter alia:

"[W]hat is usually meant is a duty to oversee conditions in the work of each contractor so far as they affect the safety of the employees of others—this, of course, in addition to caring for such parts of the structure as are not within the control of any other contractor and such facilities as are furnished by himself. He is not liable to the employees of a subcontractor, for example, for a failure to examine appliances supplied to them by their own employer, *or for a dangerous method of operation adopted by their own employer,* the danger of which is not caused by some condition of the premises for which he is responsible." (Emphasis added.)

20 A.L.R.2d at 871, and,

"This same responsibility applies to the premises in general so far as they are under the general contractor's supervision. In the usual situation, even though all the work is committed to various subcontractors, the general contractor or his superintendent undertakes to correlate the various jobs, to see that each branch of the work is properly done, and to supervise the project as a whole. As the premises are to be co-operatively used by all the workmen employed, it is part of this general supervision to see that they are safe for that use." 20 A.L.R.2d at 873.

■ Liability can be imposed upon the general contractor if work space jointly used by different subcontractors is maintained in an unsafe condition or if the general contractor coordinates the sequence of the work in such a manner as to create a dangerous condition through the interaction of the various trades. *Chesin Con-*

*struction Co. v. Epstein,* supra. Therefore, the general contractor is responsible for such things as temporary stairways and guardrails on landings, as all trades use these areas but no one trade is responsible for safety.

Each subcontractor, however, is generally responsible for the safe operation of its part of the work. Both Stewart and Poziombko testified that the plasterers were the first trade that would work on the north penthouse wall. In all probability they were the only subcontractors who would have to work in the narrow space outside. All other work except for possibly the painting would be done from the inside or without utilizing the dangerous north side area. This area then was not a common work area for various trades nor would other workers frequent this area in getting to their job.

 In our view the danger was obvious, and the injury was caused by Embe's negligent method of operation; not through any failure of Stewart or Precision Plumbing. The erection of guardrails and stairways in the common areas and barricades at either end of the north wall was part of their duty as possessors of the land to keep the premises safe, and did not amount to an assumption of responsibility for safety on the job. Embe had the responsibility to adopt a safe method of plastering, and in fact erected scaffolding to complete the work after the accident.

We would also mention that to permit recovery by employees of subcontractors from general contractors and owners who merely retain the right to control only the end result of the work, and perform their common law duty to keep the premises safe for invitees would circumvent and frustrate the purposes of the Arizona Workmen's Compensation Law. *Citizen's Utility, Inc. v. Livingston,* supra; *Chesin Construction Co. v. Epstein,* supra.

## DUTIES UNDER THE OCCUPATIONAL SAFETY AND HEALTH ACT

Pruett also maintains that the federal regulations issued pursuant to OSHA, 29 U.S.C. § 651 et seq. impose a non-delegable duty upon the general contractor to insure that adequate safety precautions are taken by all subcontractors. These regulations, he argues, are mandatory or at the very least are evidence of the standard of care to be imposed upon general contractors.

 We cannot agree with Pruett's interpretation, particularly in light of the specific provision in the statute that:

"Nothing in this chapter shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment." 29 U.S.C. § 653(b)(4).

According to this section OSHA will not support a cause of action for personal injuries to an employee or a subcontractor. *Russell v. Bartley,* 494 F.2d 334 (6th Cir. 1974); *Hare v. Federal Compress and Warehouse Company,* 359 F.Supp. 214 (N. D.Miss.1973); *Dekle v. Todd,* 132 Ga. App. 156, 207 S.E.2d 654 (1974).

The OSHA regulations would not even qualify as evidence of the standard of care because Arizona does not recognize non-delegable duties of independent contractors, *Welker v. Kennecott Copper Co.,* supra, and non-delegable duties for safety are the standard set by OSHA's regulations, 29 C. F.R. § 1518 et seq.

The judgment ordering a directed verdict is affirmed.

JACOBSON, P. J., and STEVENS, J., Retired, concur.