**Ralph MARTINEZ, husband; Mary Martinez, wife, Plaintiffs–Appellants,**

v.

**ASARCO INCORPORATED, a foreign corporation, Defendant–Appellee.**

No. 88–1654.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 14, 1989.

Decided Nov. 23, 1990.

---

**4.** If such a substance exists, other than OPP/PPP, it has not been identified.

Bernard I. Rabinovitz, Rabinovitz & Associates, Tucson, Ariz., for plaintiffs-appellants.

David F. Gaona, DeConcini, McDonald, Brammer, Yetwin & Lacy, Phoenix, Ariz., for defendant-appellee.

Before HUG, HALL and O'SCANNLAIN, Circuit Judges.

PER CURIAM:

We are presented, in this diversity case governed by the law of Arizona, with the question of whether a smelter operator has a duty to an invited independent contractor to make its premises reasonably safe, and if so, whether such duty can be met by warning of any danger.

I

Because this is an appeal from a grant of summary judgment for Asarco, the evidence is set forth in the light most favorable to appellants, the Martinezes.[1] Ralph Martinez was an employee of James & Luther ("J & L"), a company that contracted with Asarco to perform maintenance work on a blast furnace in an Asarco smelter. The work included replacement of the top of the furnace's settling chamber. In making the contract, it was understood that J & L had done similar work previously. Under the contract, J & L was to maintain at all times a competent supervisory staff and to retain responsibility for performing and supervising the repair work. J & L determined and used its own safety procedures in addition to those recommended by Asarco. J & L's foreman determined and monitored the safety equipment used by J & L.

Prior to the commencement of the repair work, representatives of Asarco conducted a tour of the smelter for several of J & L's safety and supervisory personnel. The purpose was to apprise J & L of any possible and known safety hazards, and the main focus was on the settling chamber. Asarco informed the J & L representatives that the reason for removing the settling chamber's top was to neutralize acidic mud accumulated underneath and that proper safety precautions should be taken. Asarco did not, however, inform J & L of the amount of the acidic mud, the presence of hot gases, or the likelihood of the gases or the mud escaping upon removal of the settling chamber's top. Asarco was aware that J & L would encounter toxic dust during the removal.

J & L subsequently conducted a safety meeting with its own employees. Among the topics discussed was the removal of the settling chamber's top. No mention was made at the meeting of hot gases or acidic mud or the possibility of these blowing out upon removal.

On February 10, 1986, pursuant to a timetable agreed upon by Asarco and J & L, Martinez was assigned by J & L to assist in removing the top of the settling chamber. Martinez understood that the furnace had been shut off for 72 hours when, in fact, it had been shut off only 18–19 hours before the work began. Before previous repair work on the settling chamber had been conducted in 1984, the furnace had been allowed to cool for a longer period, at least exceeding one day and possibly two.

Martinez was one of the first welders to remove a section of the top of the settling chamber. Upon his prying loose a section and lifting it up, hot gases and mud containing sulfuric acid and arsenic as by-products of the smelting process flew out from underneath the section. When these struck Martinez, they burned his eyes, face, and throat, while inhalation of fumes

---

**1.** We review *de novo* the district court's order of summary judgment. *See Huber v. Standard Ins. Co.,* 841 F.2d 980, 983 (9th Cir.1988). In conducting this review, we are obligated to view the evidence in the light most favorable to the nonmoving party, the Martinezes. *See Anderson v.* *Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). "The evidence of [the Martinezes] is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Id.*

injured his lungs. In attempting to escape from the hot gases and acidic mud, Martinez hit a catwalk railing pipe and injured his jaw. Martinez's skin is permanently scarred and he continues to have difficulty breathing.

Martinez and his wife, Mary, filed suit in the United States District Court for the District of Arizona on the basis of diversity of citizenship. *See* 28 U.S.C. § 1332 (1988).[2] The Martinezes asserted negligence claims against Asarco based on the aforesaid events. Asarco answered, denied liability, and asserted a third-party complaint against J & L for indemnification of any amount that the Martinezes might recover from Asarco. J & L answered and counterclaimed against Asarco. Asarco answered and all the issues were joined.

Asarco filed a motion for summary judgment of the Martinezes' complaint. Over the Martinezes' opposition, the district court granted the motion. The district court's brief order addressed only the question of "whether a landowner owes a duty to the employee of an independent contractor." Order at 1–2 (Dec. 31, 1987). The court concluded that Asarco neither retained control over the work nor owed any duty to an employee of an independent contractor. However, the court did not discuss the Martinezes' theory that Asarco had breached a duty to Martinez which existed simply because Martinez was Asarco's invitee regardless of any retention of control by Asarco. The Martinezes' complaint was dismissed with prejudice.

The Martinezes timely appeal. We have jurisdiction under 28 U.S.C. § 1291.

## II

■ Because this is a case under the federal diversity jurisdiction, we must first determine the applicable state substantive law.[3] *See American Triticale, Inc. v. Nyt-*

*co Servs., Inc.*, 664 F.2d 1136, 1141 (9th Cir.1982) ("It is well settled that a federal court exercising diversity jurisdiction must apply substantive state law.") (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). Arizona's choice-of-law principles will clearly govern this case: the Martinezes filed the action in the District of Arizona, and a federal court sitting in diversity must apply the choice-of-law principles of the forum state. *See Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 4–5, 96 S.Ct. 167, 167–68, 46 L.Ed.2d 3 (1975); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941).

■ We must therefore determine, under Arizona's choice-of-law principles, which state's tort law should govern this action between a citizen of New Jersey (Asarco) and citizens of Arizona (the Martinezes). In Arizona, "courts are to resolve tort issues under the law of the state having the most significant relationship to both the occurrence and the parties with respect to any particular question." *Bates v. Superior Court, Maricopa County*, 156 Ariz. 46, 49, 749 P.2d 1367, 1370 (1988). For courts determining which state has the "most significant relationship," Arizona has identified four "especially relevant contacts":

1. The place where the injury occurred;
2. The place where the conduct causing the injury occurred;
3. The domicile, residence, nationality, place of incorporation and place of business of the parties;
4. The place where the relationship, if any, between the parties is centered.

*Id.* Arizona—where the Martinezes reside, Asarco does business, the injury and the conduct causing it (under any proffered explanation) occurred, and the relationship between Martinez and Asarco is centered—

**2.** The Martinezes are citizens of Arizona. Asarco is a citizen of New Jersey, for it is incorporated and has its principal place of business there. *See* 28 U.S.C. § 1332(c)(1) (1988).

**3.** Federal law will generally govern procedural questions, or at least those questions directly answered by a valid Federal Rule of Civil Proce-

dure. *See Hanna v. Plumer*, 380 U.S. 460, 470–74, 85 S.Ct. 1136, 1143–45, 14 L.Ed.2d 8 (1965). In the instant action, this includes the standard for reviewing entry of summary judgment. *See* Fed.R.Civ.P. 56(c); *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir.1986).

clearly has "the most significant relationship to both the occurrence and the parties." *Id.* The parties do not disagree. We will therefore apply Arizona's substantive law of torts.[4]

## III

The Martinezes presented two theories of tort recovery in the district court. First, they argued that Asarco had breached a duty to Ralph Martinez by handing over to J & L an unsafe workplace and that this action had caused him injury. Second, they contended that Asarco had retained control of the workplace and was therefore liable for J & L's alleged negligence. In its order granting summary judgment, the district court discussed only the latter "retained control" theory. We examine each in turn.

### A

■ To establish a negligence case under Arizona law, the plaintiff must show that the defendant owed him a duty, that defendant breached the duty, and that defendant's breach was a proximate cause of injury to the plaintiff. *Boyle v. City of Phoenix,* 115 Ariz. 106, 107, 563 P.2d 905, 906 (1977). What, if any, duty was owed is a question of law to be determined by the court. *Markowitz v. Arizona Parks Bd.,* 146 Ariz. 352, 356, 706 P.2d 364, 368 (1985). Whether defendant breached the duty owed is ordinarily reserved for the trier of fact. *Flowers v. K-Mart Corp.,* 126 Ariz. 495, 497, 616 P.2d 955, 957 (Ct.App.1980). The question of proximate cause is not relevant to this appeal.

Thus, our role in this case is to determine what, if any, duty Asarco owed to Martinez and, if a duty was owed, whether the Martinezes met their burden of producing evidence from which a reasonable jury might reasonably conclude that Asarco had breached the duty.

4. In making our determination of Arizona law, we will follow the decisions of the Arizona Supreme Court. As for decisions of Arizona's intermediate appellate court, these are "dat[a] for ascertaining state law which [are] not to be disregarded by a federal court *unless it is convinced by other persuasive data that the highest*

■ In determining whether Asarco owed Martinez a duty, "[t]he question is whether the relationship of the parties was such that [Asarco] was under an obligation to use some care to avoid or prevent injury to [Martinez]." *Markowitz,* 146 Ariz. at 356, 706 P.2d at 368. The parties agree that Martinez was Asarco's invitee. There can therefore be no gainsaying that Asarco owed Martinez a duty: "The law is clear in Arizona that a proprietor of a business is under an affirmative duty to make the premises reasonably safe for use by invitees...." *Tribe v. Shell Oil Co.,* 133 Ariz. 517, 519, 652 P.2d 1040, 1042 (1982).

In formulating this duty owed to business invitees, Arizona has relied on the Restatement (Second) of Torts. *See, e.g., id.; Pruett v. Precision Plumbing, Inc.,* 27 Ariz.App. 288, 290, 554 P.2d 655, 657 (1976). There are two pertinent Restatement sections. Section 343 provides:

### Dangerous Conditions Known to or Discoverable by Possessor

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails *to exercise reasonable care to protect them against the danger.*

*Restatement (Second) of Torts* § 343 (1965) (emphasis added) [hereinafter *"Restatement"* and section number]. Section 343A further qualifies the possessor's duty to an invitee:

court of the state would decide otherwise." *Commissioner v. Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967) (quotation omitted) (emphasis in *Bosch*). We thus accord decisions of the Arizona Court of Appeals great weight as we make our determination.

Known or Obvious Dangers

(1) A possessor of land is not liable to his invitees for physical harm caused to them by an activity or condition on the land whose danger is known or obvious to them, *unless* the possessor should anticipate the harm despite such knowledge or obviousness.

*Restatement,* § 343A(1) (emphasis added).

Arizona on numerous occasions has applied these provisions of the Restatement to situations involving business invitees; a recent summary from the Arizona Supreme Court is helpful:

The law is clear in Arizona that a proprietor of a business is under an affirmative duty to make the premises reasonably safe for use by invitees, and the bare fact that a condition is open and obvious does not necessarily mean that it is not unreasonably dangerous. It is the general rule that a proprietor is not liable to an invitee for injuries from dangerous conditions which are obvious or as well known to the invitee as to the proprietor. But, if the proprietor should anticipate the harm from the condition despite its obviousness, he may be liable for physical injury caused by that condition. The fact that the injured party knew of the danger is not conclusive.

*Tribe,* 133 Ariz. at 519, 652 P.2d at 1042 (citations omitted); *see also Porter v. Superior Court In & For Pima County,* 144 Ariz. 346, 348, 697 P.2d 1096, 1098 (1985) ("A proprietor of a business is under an affirmative duty to make the premises reasonably safe for use by invitees."). This rule of law is longstanding in Arizona. *See, e.g., Busy Bee Buffet v. Ferrell,* 82 Ariz. 192, 194, 310 P.2d 817, 819 (1957) ("It is the universal rule of law that one engaged in business is obligated to provide a reasonably safe condition of its premises for its invitees.").

■ As set forth above, section 343A obligated Asarco to exercise reasonable care to protect Martinez *even* from dangers known by or obvious to him *if* it "should [have] anticipate[d] the harm despite such knowledge or obviousness." *Restatement,* § 343A; *accord Tribe,* 133 Ariz. at 519, 652

P.2d at 1042 (although a possessor generally is not liable for danger from conditions known by or obvious to invitee, "where the possessor has reason to anticipate harm to an invitee from a condition despite its obviousness, duty may require him to warn the invitee or take other reasonable steps to protect him"); *Brierley v. Anaconda Co.,* 111 Ariz. 8, 11, 522 P.2d 1085, 1088 (1974) (approving of a proposed jury instruction which "provides that a possessor is liable for a condition on the land whose danger is known and obvious [to an invitee] if the possessor should anticipate the harm despite such knowledge or obviousness"). Nonetheless, Asarco urges us to find that, if it did have a duty to Martinez, it was only a duty to warn J & L of various dangers attendant to working on the settling chamber. Asarco relies on two cases from the intermediate appellate court in Arizona, *Citizen's Utility, Inc. v. Livingston,* 21 Ariz.App. 48, 515 P.2d 345 (1973) and *Pruett v. Precision Plumbing, Inc.,* 27 Ariz.App. 288, 290, 554 P.2d 655, 657 (1976). In *Citizen's Utility,* the court stated:

Generally, the landowner performs his duty by giving a warning. *Gulf Oil Corp. v. Bivins,* 276 F.2d 753 (5th Cir. 1960), *cert. denied* 364 U.S. 835, 81 S.Ct. 70, 5 L.Ed.2d 61; *Gallo v. Leahy,* 297 Mass. 265, 8 N.E.2d 782 (1937). This duty to warn is fulfilled by giving a warning to the supervisory officials of the employee. *Gulf Oil Corp. v. Bivins, supra; Levesque v. Fraser Paper Limited,* 159 Me. 131, 189 A.2d 375 (1963); *Grace v. Henry Disston & Sons,* 369 Pa. 265, 85 A.2d 118 (1952); *Crane v. I.T.E. Circuit Breaker Co.,* 443 Pa. 442, 278 A.2d 362 (1971); *Texas Elec. Service Co. v. Holt,* 249 S.W.2d 662 (Tex.Civ.App. 1952); *Crawford Johnson & Co. v. Duffner,* 279 Ala. 678, 189 So.2d 474 (1966).

21 Ariz.App. at 53, 515 P.2d at 350 (italics added); *see also Pruett,* 27 Ariz.App. at 290, 554 P.2d at 657 ("Generally, the duty can be performed by giving a warning to the supervisor of the employees.") (citing *Citizen's Utility* ).

There are at least two problems facing Asarco in its attempt to rely on these cases for the notion that it is entitled to summary judgment on the question of whether it fulfilled its duty to Martinez. First, Asarco asserts that it "fully informed Martinez's supervisors of *all potential hazards known to Asarco* in performing the repair work, including those involved with the settling chamber and acidic mud below the settling chamber top." Appellee's Brief at 16 (emphasis added). Even assuming that this statement is true, we cannot conclude from it that Asarco has necessarily met its duty. The duty applies to certain dangerous conditions of which Asarco "kn[ew] *or* by the exercise of reasonable care would [have] discover[ed]." *Restatement* § 343 (emphasis added); *accord Tribe*, 133 Ariz. at 519, 652 P.2d at 1042. The Martinezes are thus free to argue that the particular danger which harmed Ralph Martinez is one of which Asarco did not know but should have known and that its warning of other dangers was therefore insufficient.

Second, we do not know that warning, as a matter of Arizona law, satisfies the land possessor's duty to exercise reasonable care with respect to invitees. We note that the Arizona Supreme Court has never so held. Mere lack of such a holding by the Arizona Supreme Court would not, however, dictate our determination. We so determine because "other persuasive data" convince us that the Arizona Supreme Court "would decide otherwise" than did the Arizona Court of Appeals in *Citizen's Utility* (and in *Pruett*, which followed *Citizen's Utility*). *See Commissioner v. Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967); *see also Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482–83 (9th Cir.1986) (rejecting California Court of Appeal case upon showing that California Supreme Court would hold otherwise), *modified on other grounds*, 810 F.2d 1517 (1987). Indeed, Restatement sections 343 and 343A, which the Arizona courts follow "[i]n the absence of law to the contrary," *Webster v. Culbertson*, 158 Ariz. 159, 162, 761 P.2d 1063, 1066 (1988), speak in terms of exercising reasonable care and nowhere indicate that mere warning should be considered, as a matter of law, reasonable care.

Moreover, our review of Arizona Supreme Court cases reveals little support for the proposition that warning alone will always be sufficient. In fact, the Arizona Supreme Court has been careful to speak in terms of "a duty to make the premises reasonably safe." *Tribe*, 133 Ariz. at 519, 652 P.2d at 1042. When that court or the Restatement has mentioned warning, *each has done so in the context of an assumption that such an action was reasonable. See, e.g., id.* ("where the possessor has reason to anticipate harm to an invitee from a condition despite its obviousness, duty may require him to warn the invitee or take other reasonable steps to protect him"); *Restatement*, § 343A comment f (considering land possessor's "duty of reasonable care which he owes to the invitee for his protection" and stating that "[t]his duty may require him to warn the invitee, or to take *other reasonable steps* to protect him") (emphasis added). Most recently, the Arizona high court in *Robertson v. Sixpence Inns of America, Inc.*, 163 Ariz. 539, 789 P.2d 1040 (1990), observed that "[i]n some situations ... a contractee must still protect an independent contractor from known dangers or provide adequate warning of their existence." *Id.* at 545, 789 P.2d at 1046. Although this sentence may be read as suggesting that a warning alone might be sufficient, the court proceeded: "Such an obligation exists, for example, where the circumstances indicate that the contractee should anticipate harm to the independent contractor *despite the contractor's knowledge of the danger.*" *Id.* (emphasis added). Clearly, if the contractee can anticipate harm even where the contractor is aware of the danger, something more than a reaffirmation of the danger is required.

Thus, despite Asarco's urgings, we are not persuaded that in Arizona a warning in a context such as the instant one will always suffice. Rather, it seems, the fact that a warning was given should ordinarily be weighed (and perhaps heavily) by the

**1474**

trier of fact as it determines whether the landowner fulfilled his "affirmative duty to make the premises reasonably safe for use by invitees." *Tribe,* 133 Ariz. at 519, 652 P.2d at 1042. It is, after all, in Arizona, a duty to exercise reasonable care to *make safe* in most cases, not merely a duty to exercise reasonable care. *Cf. id.* ("The fact that the injured party knew of the danger is not conclusive."). If a landowner can reasonably make his premises safe, and chooses instead merely to warn his *invitees,* does he necessarily fulfill his duty in Arizona as a matter of law? Surely not.

Asarco propounds at length about the precautions that it took in handing over its workplace to J & L. For instance, Asarco notes that it warned J & L about acidic mud and the necessity for safety equipment. It points out that the contract required J & L to provide certain employees with head, eye, and face protection. It cites other facts which we decline here to recount; they all may be just as Asarco says. We note, however, that Asarco's argument is "an instance of confusing 'the existence of a duty' with 'specific details' of conduct." *McDonald v. Smitty's Super Valu, Inc.,* 157 Ariz. 316, 318, 757 P.2d 120, 122 (Ct.App.1988) (quoting *Markowitz,* 146 Ariz. at 355, 706 P.2d at 367). "These details of conduct bear upon the issue of whether the defendant who does have a duty has breached the applicable standard of care and not whether such a standard of care exists in the first instance." *Markowitz,* 146 Ariz. at 355, 706 P.2d at 367. We agree with the Martinezes that the question whether a breach of duty exists is one for a jury because the relevant facts are reasonably disputed.

■ We must therefore next consider whether the Martinezes presented sufficient evidence to raise a genuine issue of material fact as to whether Asarco had breached its duty. Asarco presented evidence that it had not breached whatever duty it had, and we may affirm the order of summary judgment if we find that the Martinezes did not meet their burden of production. *See DeHorney v. Bank of America Nat'l Trust and Sav. Ass'n,* 879 F.2d 459, 464 (9th Cir.1989); *Soranno's Gasco, Inc. v. Morgan,* 874 F.2d 1310, 1313 (9th Cir.1989). We need not undertake a prolonged recounting of the evidence; it is not our role to identify *every* genuine issue of material fact.

Given that the duty was to exercise reasonable care with regard to Martinez's safety, it is clear that the Martinezes have raised genuine issues of material fact. For instance, Asarco notes that it warned J & L's superiors about the presence in the settling chamber of acidic mud. There is conflicting evidence, however, as to whether J & L was fully warned about the amount of such mud or about the presence of hot gases or about the likelihood of the mud or gases escaping upon removal of the roof. Similarly, Frank Stroud, J & L's foreman, testified that he understood from Asarco that the acid would be in the form of a thick sludge, and not under pressure. There is also evidence that Asarco knew or should have known of these or similar dangers. For instance, in the past, the furnace had been shut off for a longer period of time before repair work. The Martinezes argued along these lines in the district court. Thus, on the one hand, the Martinezes argue, with supporting evidence, that Asarco did not even warn with particularity of unsafe conditions on its property. On the other hand, they also argue that, even if it did warn of these dangers, mere warning was insufficient in this instance to satisfy the duty described above.

The genuineness of the issues of fact that the Martinezes raise is demonstrated by the evidence they submitted, particularly in depositional form. The materiality of these facts is shown by our earlier discussion of Asarco's duty. Whether Asarco breached the duty by doing or not doing the things alleged is therefore a question properly reserved for the trier of fact.

In short, the district court erred in finding that Asarco "owed no duty to" Martinez. Order at 2 (Dec. 31, 1987). It should have allowed the Martinezes to proceed to trial on the question of whether Asarco's actions satisfied its above-described duty to Ralph Martinez.

B

■■■ The Martinezes also argue that Asarco retained sufficient control over the work performed by J & L that Asarco is liable under Arizona law for any torts committed by J & L. The district court found that the Martinezes had failed to present sufficient facts from which a jury could so find under the applicable law. We agree here with the reasoning of the district court.

Generally, the owner of property is not liable for the negligence of an independent contractor. *Sullins v. Third and Catalina Constr. Partnership*, 124 Ariz. 114, 118, 602 P.2d 495, 499 (Ct.App.1979). An exception to this general rule is the doctrine of "retained control." "Retained control over the work entrusted to an independent contractor may expose the owner to liability for injuries to an employee of the independent contractor." *Citizen's Utility*, 21 Ariz.App. at 53, 515 P.2d at 350. Arizona follows section 414 of the Restatement regarding retained control:

Negligence in Exercising Control
Retained by Employer

One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

*Restatement*, § 414, *quoted in Pruett*, 27 Ariz.App. at 291, 554 P.2d at 658. This rule of derivative liability is further delineated by the Restatement:

In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations....
There must be such a retention of a right

of supervision that the contractor is not entirely free to do the work in his own way.

*Restatement*, § 414 comment c; *accord Sullins*, 124 Ariz. at 118, 602 P.2d at 499 (quoting comment c).

The parties dispute the district court's conclusion that Asarco did not retain control over the manner in which J & L was to perform its work. The Martinezes argue that Asarco controlled the commencement of work on the settling chamber, scheduled the work, determined when the furnace would be shut off, and had supervisory personnel on the job site. The record reveals support for each of these assertions. We nonetheless agree with Asarco that even if they are all true, the Martinezes have failed to raise a genuine dispute as to whether Asarco retained sufficient control to be subject to liability under section 414 of the Restatement. With the exception of the presence of supervisory personnel, all of the asserted Asarco actions concern control over only the sequence of the work. Such control is insufficient to establish liability under section 414 as applied by Arizona courts. *Sullins*, 124 Ariz. at 119, 602 P.2d at 500 ("The right to program or direct the sequence of the work ... does not give defendant the right to control the method or manner of doing the work."); *Restatement*, § 414 comment a (stating same). And even the presence of supervisory personnel is not sufficient to discharge the Martinezes' burden of producing at least some evidence that Asarco retained "control ... over the method of doing *details* of the work." *Cordova v. Parrett*, 146 Ariz. 79, 82, 703 P.2d 1228, 1231 (Ct.App.1985) (emphasis added).

In short, the district court did not err in finding that Asarco is not liable under the "retained control" theory for any negligence by J & L.

IV

While the district court properly held that Asarco cannot be held liable under the "retained control" theory, there is a substantial question of material fact whether

Asarco fulfilled its duty owed to Martinez. Therefore, the case must be

REVERSED and REMANDED.